1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC L. WAYNE,

11           Petitioner,                    No. CIV S-03-2437 RRB DAD P

12       vs.

13   THOMAS FELKER, Acting Warden,
     et al.,
14
             Respondents.              FINDINGS & RECOMMENDATIONS
15
     _____/
16

17           Petitioner is a state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2002 judgment of

19   conviction entered against him on January 18, 2002, in the Sacramento County Superior Court on

20   charges of first degree robbery and assault by means of force likely to produce great bodily

21   injury.  He seeks relief on the grounds that: (1) his right to confrontation was violated by the

22   erroneous admission of evidence at his trial; and (2) his right to due process was violated by jury

23   instruction error.  Upon careful consideration of the record and the applicable law, the

24   undersigned will recommend that petitioner's application for habeas corpus relief be denied.[1]

25   _____

26           [1] On February 8, 2007, petitioner filed a letter in which he requests this court's assistance
     with an alleged error in his sentence.  On September 4, 2007 and October 17, 2007, petitioner

                                            1

## PROCEDURAL AND FACTUAL BACKGROUND[2]

A jury convicted defendant Eric Lamore Wayne of two counts of first degree robbery (Pen. Code, §§ 211, 212.5; counts I, V) and one count of assault by means of force likely to cause great bodily injury (Pen. Code, §245, subd. (a); count II), and found he personally inflicted great bodily injury during the commission of counts I and II (Pen. Code, § 12022.7, subd. (a)). He was sentenced to an aggregate term of 10 years and 4 months in state prison.

* * *

*Counts I (robbery) and II (assault by means of force likely to cause great bodily injury)*

On the morning of January 23, 2000, Julie R., who recently had placed an advertisement indicating she would provide escort services, received a telephone call from someone who identified himself as "Maleke." She agreed to have him come to her apartment at 10:00 a.m.

Defendant appeared at Julie's door between 9:15 and 9:30 a.m., and identified himself as Maleke. Julie told him to return at 10:00 a.m. as agreed. When he came back at the appointed time, Julie let him into her apartment and the two chatted for a while. The last thing that Julie recalled was defendant pulling his arm back as if to punch her. The next thing she knew, Luis Garcia was hovering over her prone body and asking her what had happened.

Garcia, who lived next door to Julie, had heard her screaming, yelling and groaning, and also had heard wrestling and banging noises coming from her apartment. Thereafter, he heard Julie's apartment door open, the sound of footsteps running, and the screech of tires as a car raced away. Garcia heard someone knock on his front door. When he answered he found Julie bruised and battered, with blood coming from her nose, mouth, cheeks, and forehead. Garcia telephoned 911, to obtain assistance for Julie.

---

filed letters in which he asks that the court consider the recent decision in <u>Cunningham v. California</u>, ___ U.S. ___, 127 S. Ct. 856 (2007) (holding that California's determinate sentencing law violated a defendant's right to a trial by jury), in connection with the instant habeas petition. To the extent that petitioner is attempting to present entirely new claims in his letter, they have not been properly raised by way of petition for writ of habeas corpus. See <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, the court will not address them.

   [2] The following summary is drawn from the March 27, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-5, filed in this court on April 26, 2004, as Exhibit C to respondents' Answer.

The police officer who responded to the scene observed that Julie was bloody and had two black eyes, and that various parts of her face were swollen.  The officer also saw blood on the carpet and walls of the apartment.

Julie was taken to the hospital and ultimately underwent three different surgical procedures to repair the damage inflicted by defendant.

After the assault, Julie noticed that her purse, cellular phone, and checkbook were missing from her apartment.  Her phone billing records revealed that a call had been made to defendant's apartment with Julie's stolen phone.

Defendant's girlfriend, April Parsons, testified that defendant had given her a cell phone, which she had used to call the apartment she shared with defendant.  She also testified that defendant told her he knew someone who had made a lot of money by robbing escort service workers.  After defendant made this statement, Parsons began receiving phone calls at the apartment from women working for escort services who asked for someone with an ethnic sounding name.  Parsons had heard of the names "Namu" and "Maleke" from defendant.

On March 11, 2000, the police interviewed defendant about the assault.  He initially denied being in Julie's apartment on January 23; but when confronted with Julie's picture and copies of her cell phone records, he said that she resembled a woman he knew by the name of "Denise."  Defendant then admitted being in Julie's apartment, hitting her two to five times, and taking her cell phone.

*Count V (robbery)*

At 6:41 p.m. on March 15, 1999, Stephanie M. called 911 to report that she had been raped and her purse had been stolen by a man who had offered to help her find an apartment that she was trying to locate on H Street in Sacramento.  Officer Bonnie Welch responded to the call within minutes and found Stephanie crying and obviously upset.

Stephanie told Officer Welch that she worked for an escort service and had been driven by a friend to the area to meet an individual named "Namu."  After she had trouble finding the address that she had been given, a black male standing nearby indicated he knew "Namu" and would take her to him.  They walked in back of an apartment complex, where the man forced her into a laundry room, slammed the door shut, and threatened to kill her if she screamed.  Despite this warning, Stephanie screamed, "Please don't hurt me." Someone outside the door asked if everything was okay.  The assailant replied they were okay and forced Stephanie to say she was okay.

3

After the person who was outside left, the assailant ordered Stephanie to disrobe.  When she realized she was going to be raped, Stephanie gave the assailant a condom, which he used when he raped her.  Thereafter, the man removed the condom, took Stephanie's purse, and fled the scene.

Immediately following this interview, Officer Jenny Fite talked with Stephanie.  She gave Fite a statement similar to the one she gave to Officer Welch, except she added that the man forced her to orally copulate him after he raped her.  Fite transported Stephanie to the hospital, where she reported having been the victim of a sexual assault.

A witness who lived in the apartment next to the laundry room testified that she heard a "fearful" scream coming from that room around 6:35 p.m.  She walked over to the closed laundry room door and asked, "is everyone okay in there."  A male answered that they were okay, and then a female said she was fine.

Defendant's fingerprints were found in the laundry room, and his seminal fluid was found within the condom found at the crime scene.  Stephanie's skin cells were found on the exterior of the condom.

A detective interviewed defendant on April 28, 1999.  Defendant initially denied knowing Stephanie, but then admitted that he had paid her $30 to orally copulate him in an apartment near the laundry room.  He claimed the act was consensual, denied having intercourse with Stephanie, and denied taking her purse.  He could not explain the presence of his fingerprints in the laundry room.

Stephanie, who the court ruled was unavailable, did not testify at the trial.  Although defendant was found guilty of robbing her, the jury was unable to reach verdicts on the charges that he raped Stephanie (count III) and forced her to orally copulate him (count IV).[3]

## ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

---

[3]  Defendant also was charged with the robbery of another person, Denise Guth, who worked for an escort service.  (Count VI).  However, the jury was unable to reach a verdict on this charge, the factual allegations of which are not relevant to the claims of error that defendant raises on appeal.

861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

5

1   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

2   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

3   1167 (9th Cir. 2002).

4   II.  Petitioner's Claims

5            A.  Confrontation Clause

6            Petitioner argues that his rights to confrontation and a fair trial were violated by

7   the admission into evidence of the hearsay statements of victim Stephanie M.  The California

8   Court of Appeal fairly explained the background to this claim as follows:

9            Defendant contends the trial court erred in admitting three
              statements made by Stephanie M. when she reported that defendant
10           had robbed and sexually assaulted her.

11           The first statement was the tape recording of Stephanie's 911
              telephone call at 6:41 p.m., in which she reported that she had been
12           raped two minutes earlier by a black man in a laundry room at an
              apartment complex and that the man had stolen her leather purse.
13
              The second statement was made by Stephanie minutes later when
14           Officer Welch arrived at the crime scene at 6:49 p.m.  Stephanie,
              who was crying and obviously upset, told Welch that a black man
15           raped her in a laundry room and then stole her purse before fleeing
              the scene.  Stephanie remained emotionally distressed throughout
16           the brief interview, which lasted about 10 minutes.  Welch merely
              took Stephanie's preliminary statement and did not ask Stephanie a
17           lot of clarifying questions.  Welch's job was simply to determine
              whether a crime had been committed, get a description, and then
18           pass the investigation on to the investigating officer, who would
              obtain a more detailed statement.
19
              The third statement was made to Officer Fite, who arrived shortly
20           after Officer Welch at around 7:00 p.m.  Fite observed that
              Stephanie was crying and, at times during the interview, her hands
21           were shaking.  Stephanie gave Fite a statement similar to her
              statement to Welch, except that the man forced her to orally
22           copulate him after he raped her.

23           The prosecutor sought to introduce the statements pursuant to
              Evidence Code section 1240, the spontaneous declaration
24           exception to the hearsay rule, and Evidence Code section 1370, a
              hearsay exception for statements concerning the infliction or threat
25

26   /////

6

1

of physical injury.  (Further section references are to the Evidence Code unless otherwise specified.)[4]

2

3

Defendant objected to the statements, asserting that their introduction would violate his rights to due process of law and the confrontation of witnesses against him.

4

5

The trial court admitted all of the statements pursuant to section 1370.  In addition, the court allowed the introduction of Stephanie's statements to the 911 operator and to Officer Welch on the ground that they were spontaneous declarations within the meaning of section 1240.

6

7

8

(Opinion at 6-8.)

9

In his petition, petitioner challenges the trial court's ruling with respect to all three

10

statements made by Stephanie M.  Petitioner notes that Stephanie did not testify at trial "or at any

11

judicial proceeding;" that her allegations against petitioner were never subjected to cross-

12

examination; and that "her credibility was never challenged and her demeanor was never

13

evaluated by the jury."  (Pet. at 5.)  Petitioner argues that Stephanie's statements established, at

14

most, that a sexual encounter took place, but not "a forcible one and not a robbery."  (Traverse at

15

7.)  He also argues that there was insufficient evidence that Stephanie was truly unavailable for

16

trial.  (Id. at 8.)  Finally, petitioner contends that California Evidence Code § 1370 is not a

17

"firmly rooted exception to the hearsay rule" for purposes of the Confrontation Clause.  (Id.)

18

19

    [4]  Section 1370 provides in pertinent part:  "(a) Evidence of a statement by a declarant is

20

not made inadmissible by the hearsay rule if all of the following conditions are met:  [¶]  (1) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.  [¶] (2) The declarant is unavailable as a witness pursuant to Section 240.  [¶] (3)

21

The statement was made at or near the time of the infliction or threat of physical injury. Evidence of statements made more than five years before the filing of the current action or

22

proceeding shall be inadmissible under this section.  [¶] (4) The statement was made under

23

circumstances that would indicate its trustworthiness.  [¶] (5) The statement was made in writing, was electronically recorded, or made to a physician, nurse, paramedic, or to a law enforcement

24

official.  [¶] (b) For purposes of paragraph (4) of subdivision (a), circumstances relevant to the issue of trustworthiness include, but are not limited to, the following:  [¶] (1) Whether the

25

statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.  [¶] (2) Whether the declarant has a bias or motive for fabricating the statement,

26

and the extent of any bias or motive.  [¶] (3) Whether the statement is corroborated by evidence other than statements that are admissible only pursuant to this section."

7

1 Petitioner claims that the admission of Stephanie's hearsay statements at his trial violated his

2 rights pursuant to the Sixth and Fourteenth Amendments.[5]

3            The California Court of Appeal agreed with the trial court that Stephanie's

4 statements to the 911 operator and to Officer Welch were properly admitted pursuant to

5 California Evidence Code § 1240, the hearsay exception for "excited utterances" or "spontaneous

6 declarations." (Opinion at 8-9.)  The court concluded that because these two statements were

7 admissible, petitioner was not harmed by the trial court's ruling allowing the introduction of all

8 three statements pursuant to California Evidence Code § 1370. (Id.)  The appellate court did not

9 address the merits of petitioner's challenge to the admissibility of the hearsay statements

10 pursuant to California Evidence Code § 1370 or the trial court's ruling with regard to Stephanie's

11 unavailability. (Id. at 8.)  The court explained its reasoning as follows:

12       Section 1240 provides: "Evidence of a statement is not made
        inadmissible by the hearsay rule if the statement: [¶] (a) Purports to
13       narrate, describe, or explain an act, condition, or event perceived
        by the declarant; and [¶] (b) Was made spontaneously while the
14       declarant was under the stress of excitement caused by such
        perception."
15
        A spontaneous statement is one made without deliberation or
16       reflection." (citation omitted.)  The law regards spontaneous
        declarations as reliable, and thus admissible, because the stress of
17       the nervous excitement stills the reflective faculties, and makes the
        utterance an instinctive and uninhibited expression of the speaker's
18       actual impressions and belief. (citation omitted.)

19       _____

20       [5] On appeal, petitioner argued that:

21       absent [Stephanie M.'s] statements, there was no evidence to
        support his conviction for robbing Stephanie, given that she did not
22       testify at trial.  He argues the trial court erred in ruling Stephanie's
        statements to Officer Welch were admissible pursuant to section
23       1240, and in ruling all of her statements would come in pursuant to
        section 1370, which defendant contends is unconstitutional.
24       Defendant also appears to believe the court erred in ruling
        Stephanie was unavailable as a witness, which is a prerequisite to
25       the admission of her statements pursuant to section 1370.

26 (Opinion at 8.)

The factors to be considered in assessing a statement's admissibility pursuant to section 1240 include the amount of time that elapsed between the event and the statement, and whether the statement was blurted out or offered in response to questions. However, neither the timing of the statement nor the fact it is made in response to a question deprives a statement of spontaneity if it is made under the stress of excitement, while the "'reflective powers were still in abeyance.'"  (citations omitted.)

Furthermore, there is no requirement that the declarant be unavailable as a witness as a prerequisite to the admission of a spontaneous declaration.  (citations omitted.)

Whether the foundational requirements of section 1240 have been fulfilled is a matter within the broad discretion of the trial court, subject to review for abuse of discretion.  (citations omitted.)

As we have noted, defendant does not dispute that Stephanie's statements to the 911 operator were properly admitted pursuant to section 1240.

Stephanie then gave a statement to Officer Welch within 15 minutes after defendant assaulted Stephanie.  She was crying and obviously upset throughout the interview.  Her statement was not the result of detailed questioning, since Welch merely took Stephanie's initial statement and left the detailed questioning to Officer Fite.  This evidence is sufficient to support the trial court's conclusion that Stephanie's mental processes were still dominated by nervous excitement.  (People v. Gutierrez (2000) 78 Cal.App.4th 170, 180 [testimony that the declarant was "'quite a little like nervous'" and "scared" is sufficient to support a conclusion that the declarant's statement was made while nervous excitement still dominated the declarant's mental processes].)

Both of these statements related that a man, who Stephanie alleged raped her, forcibly stole her leather purse.  The semen in the condom found at the scene identified defendant as the culprit.  And defendant's statement that he had consensual sex with Stephanie buttressed the identification of him as the man who Stephanie asserted stole her purse.

The admission of Stephanie's statement to Officer Fite added nothing damaging regarding the robbery, and defendant does not persuasively identify any prejudice arising from the admission of this statement in the face of Stephanie's 911 report and her statement to Officer Welch.  (citations omitted.)

(Id. at 9-11.)

/////

9

1    The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

2    prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

3    him. . . ."  U.S. Const. amend. VI.  This right, extended to the States by the Fourteenth

4    Amendment, includes the right to cross-examine witnesses.  Cruz v. New York, 481 U.S. 186,

5    189 (1987) (citing Pointer v. Texas, 380 U.S. 400, 404 (1965)).  "The central concern of the

6    Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by

7    subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."

8    Lilly v. Virginia, 527 U.S. 116, 124 (1999) (quoting Maryland v. Craig, 497 U.S. 836, 845

9    (1990)).  See also Davis v Alaska, 415 U.S. 308, 315 (1974) (a primary interest secured by the

10    Confrontation Clause is the right of cross-examination).  However, an unavailable witness's out-

11    of-court statement may be admitted against a criminal defendant and not run afoul of the

12    Confrontation Clause so long as it bears adequate indicia of reliability – i.e., falls within a

13    "firmly rooted hearsay exception" or otherwise bears "particularized guarantees of

14    trustworthiness" such that adversarial testing would be expected to add little, if anything, to the

15    statement's reliability.  Ohio v. Roberts, 448 U.S. 56, 66 (1980); Lilly, 527 U.S. at 124-25.

16    Whether a statement bears "particularized guarantees of trustworthiness" must be shown from

17    the totality of the circumstances surrounding the making of the statement, not from the trial

18    evidence as a whole.  Idaho v. Wright, 497 U.S. 805, 819 (1990).  Petitioner's Confrontation

19    Clause claim is governed by these standards.[6]  See Winzer v. Hall, 494 F.3d 1192, 1196-98 (9th

20    _____

21        [6]  In 2004, the United States Supreme Court held that the Confrontation Clause bars the
state from introducing into evidence out-of-court statements which are testimonial in nature

22    unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the
witness, regardless of whether such statements are deemed reliable.  Crawford v. Washington,

23    541 U.S. 36 (2004).  However, for purposes of the AEDPA, this court must look to federal law as
it existed at the time of the state court decision in determining whether the petition should be

24    granted.  Williams v. Taylor, 529 U.S. 362, 412 (2000); Clark v. Murphy, 331 F.3d 1062, 1069
(9th Cir. 2003).  The holding in Crawford is not retroactive to cases on collateral review.

25    Whorton v. Bockting, ___ U.S. ___, 127 S. Ct. 1173, 1184 (2007).  Therefore, the decision in
Crawford does not apply because it was decided after petitioner's trial and appeal.  Winzer v.

26    Hall, 494 F.3d 1192, 1194 (9th Cir. 2007).  In addition, in Davis v. Washington, ___ U.S. ___,
126 S. Ct. 2266 (2006), the United States Supreme Court elaborated on the holding in Crawford,

10

1    Cir. 2007) (applying these standards); Bolton v. Knowles, No. 05-15966, 2007 WL 793200, *1

2    (9th Cir. Mar. 15, 2007) (concluding that where habeas petitioner's direct review became final

3    prior to the decision in Crawford, his Confrontation Clause claim was governed by the standards

4    set forth in Ohio v. Roberts).[7]

5           The United States Supreme Court has held that "hearsay statements characterized

6    as 'excited utterances' or 'spontaneous declarations' are 'firmly rooted' exceptions to hearsay."

7    Winzer, 494 F.3d at 1197 (citing Wright, 497 U.S. at 820 and White v. Illinois, 502 U.S. 346,

8    355-56 (1992)).  A spontaneous declaration is "[a] statement that has been offered in a moment

9    of excitement-without the opportunity to reflect on the consequences of one's exclamation."

10   White, 502 U.S. at 356.  On the other hand, a statement made "after the declarant has had an

11   opportunity to reflect or discuss the matter with others" is not considered a spontaneous

12   declaration.  Wright, 497 U.S. at 820.  In this case, as described above, the California Court of

13   Appeal concluded that Stephanie M.'s statements to the 911 operator and to Officer Welch were

14   "spontaneous declarations" within the meaning of California Evidence Code § 1240 and were

15   therefore properly admitted into evidence at petitioner's trial.  (Opinion at 8.)

16   /////

17

18   exploring the parameters of statements which were "testimonial" in nature.  In that case, which
19   involved a call to a 911 operator during an ongoing emergency, the Supreme Court held that
     statements are non-testimonial (and therefore not subject to the requirements set forth in
20   Crawford) "when made in the course of police interrogation under circumstances objectively
     indicating that the primary purpose of the interrogation is to enable police assistance to meet an
21   ongoing emergency" but are testimonial "when the circumstances objectively indicate that there
     is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or
22   prove past events potentially relevant to later criminal prosecution."  Id. at 2273-74.  Davis v.
     Washington was decided after Crawford and is therefore also not applicable to resolution of the
23   instant case, which must be decided on the basis of the law as it existed at the time petitioner's
     conviction became final.  See Davis v. Runnels, No. C 02-0538 PJH, 2007 WL 2221068 at *16
24   n.4 (N.D. Cal. Aug. 2, 2007) (concluding that because Davis was decided after Crawford, it was
     not applicable to a pre-Crawford habeas petition).  Accordingly, this court will not rely on the
25   decisions in Crawford v. Washington or Davis v. Washington in analyzing petitioner's claims.

26        [7] Citation of this unpublished disposition by the Ninth Circuit Court of Appeals is
     appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

1    State court rulings on the admissibility of evidence generally are not within the

2    scope of federal habeas review.  Estelle, 502 U.S. at 67-68.  Therefore, petitioner could not

3    obtain federal habeas relief on a claim that the California courts wrongly found that Stephanie's

4    statements fell within California's spontaneous statement exception to the hearsay rule.

5    However, where a petitioner alleges a Confrontation Clause violation, a federal habeas court

6    must independently analyze whether a state court decision that statements fall or do not fall

7    within a firmly rooted exception to the hearsay rule have a factual basis in the record.  Winzer,

8    494 F.3d at 1199 ("in sum, even under AEDPA, we cannot avoid the question of whether a

9    hearsay statement falls within a firmly rooted exception to hearsay and so complies with the

10   Confrontation Clause").  Accordingly, this court must independently analyze the record to

11   determine whether a sufficient factual basis supports the state court's conclusion that Stephanie's

12   statements to the 911 operator and to Officer Welch were spontaneous declarations and therefore

13   not subject to exclusion under the hearsay rule.  See Winzer, 494 F.3d at 1199-1201.

14   In Winzer, the victim told a 911 operator, several hours after the fact, and a police

15   officer, five hours after the fact, that her boyfriend had threatened her with violence.  494 F.3d at

16   1195.  The trial court rejected the prosecutor's argument that the 911 call was a "spontaneous

17   statement," admissible under an exception to the hearsay rule.  Id.  The trial court reasoned that

18   the victim was not acting under the stress of the initial event when she made the 911 call, noting

19   that she was calm during the call; she did not appear to be "under the distress of the excitement

20   of the event;" and she talked largely about matters unrelated to the alleged threat.  Id.  However,

21   the trial court found that the victim's subsequent statements to the police officer were

22   "spontaneous statements" because the victim and her daughter appeared to be "visibly upset,

23   emotionally upset, almost to the point of shaking, [and] fearful" at the time the officer talked to

24   them.  Id.

25   The Ninth Circuit reversed the denial of Winzer's habeas petition, finding, after

26   independent review, that the victim's statements to the police officer were not "spontaneous" and

12

were therefore admitted in violation of the Confrontation Clause.  494 F.3d at 1200-01.  In

reaching this conclusion, the appellate court presumed that the state courts' factual findings with

regard to the demeanor of the victim when she spoke with the police officer were correct.  Id. at

1199.  However, the court concluded that "the mere fact that [the victim] was upset as she spoke

would not make her utterance reliable" and that "[j]ust because a subject is or appears to be upset

offers no guarantee that he has not taken time to consider the matter."  Id. at 1200.  The Ninth

Circuit Court of Appeals made the following observations:

> the circumstances that leap from the record before this Court do
> nothing to preclude, or even diminish, the possibility of
> confabulation or coaching.  [The victim] told [the police officer]
> about something that happened more than five and a half hours
> earlier.  The trial court determined that her intervening 911 call
> was *not* a spontaneous response to an exciting event and, in fact,
> that the "bulk" of her call did not concern [petitioner's] threat at
> all.

Id. (emphasis in original.)  The appellate court found that the victim "had hours to reflect, to

forget, to embellish, to be distracted, and to talk with her daughter, her mother, and perhaps

others before [the police] arrived."  Id.  The court concluded that, under these circumstances, the

victim's statements to the police officer did not fall within the "spontaneous statement"

exception to the hearsay rule and should have been excluded from the petitioner's trial.  Id.[8]

---

[8]  In contrast with respect to the spontaneous statement determination are the facts
presented in Davis v. Runnels, No. C 02-0538 PJH, 2007 WL 2221068 (N.D. Cal. Aug. 2, 2007).
There, the victim told a police officer, who responded "shortly after" the victim's mother made a
911 call, that her boyfriend (the petitioner) had hit her over the head with a hammer.  2007 WL
2221068 at *1-2, 15-16.  The victim's mother described the altercation to the responding officer.
Id. at *2, 16.  The district court concluded that the statements of both the victim and her mother
fell within California's "spontaneous declaration" exception to the hearsay rule and were
properly admitted into evidence at petitioner's trial.  Id. at *15-16.  The district court found the
state appellate court's determination in affirming the conviction to be reasonable since the
victim's statements were made immediately following the assault, while she was still under the
stress of the event, and were made without an opportunity for the victim to reflect on the
consequences of her remarks.  Id. at *15.  Regarding the statements by the victim's mother, the
court found the state appellate court's determination to be reasonable because the mother's
statements were "made [to] the first person in whom she could confide and at the first
opportunity," were based on personal knowledge and observation, and were made right after the

1    In the instant case, Stephanie's statements to the 911 operator were made

2    immediately after the event, with no opportunity to reflect or consider.  Her statements to Officer

3    Welch were made within fifteen minutes after the assault occurred.  Stephanie was crying and

4    obviously upset throughout the police interview, she related the same story she had told the 911

5    operator, her statement was not the result of any detailed questioning, she had no motive to

6    fabricate, and the interview was preliminary in nature.  Under these circumstances, the state

7    courts' conclusion that Stephanie's statements during both the 911 call and to Officer Welch

8    were "spontaneous declarations" is not an unreasonable application of federal law as set forth in

9    the decisions in White v. Illinois or Idaho v. Wright.  Unlike the situation presented in Winzer,

10   Stephanie did not have time to reflect on the events or discuss the matter with anyone else before

11   describing to Officer Welch what had just happened to her.  The state court's conclusion that

12   Stephanie's statements during the 911 call and to Officer Welch were not admitted in violation of

13   the Confrontation Clause is not contrary to or an unreasonable application of federal law as it

14   existed at the time of the state appellate court's ruling on petitioner's claims.

15   The California Court of Appeal also determined that any error in admitting

16   Stephanie's statement to Officer Fite pursuant to California Evidence Code § 1370 was harmless

17   because that statement added "nothing damaging regarding the robbery . . . in the face of

18   Stephanie's 911 report and her statement to Officer Welch."  (Opinion at 11.)  The state courts'

19   decision in this regard is not objectively unreasonable and should not be set aside.  Stephanie's

20   statements to Officer Fite were cumulative to her statements during the 911 call and to Officer

21   Welch, in which she described petitioner as the person who raped her and stole her purse.

22   Accordingly, any error in admitting Stephanie's statements to Officer Fite was harmless.

23   For all of the reasons described above, petitioner is not entitled to habeas relief on

24   his Confrontation Clause claim.

25

26   attack on her daughter.  Id. at *16.  Accordingly, the district court agreed that all of the
     statements were properly admitted into evidence.  Id. at *15-16.

14

1          B.  Jury Instructions

2          Petitioner raises several claims concerning the jury instructions given at his trial.

3  After setting forth the applicable legal principles, the court evaluates these claims in turn below.

4          1.  Legal Standards

5          A challenge to jury instructions does not generally state a federal constitutional

6  claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

7  U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus

8  is unavailable for alleged error in the interpretation or application of state law.  Middleton, 768

9  F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

10 Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a "claim of error based upon a

11 right not specifically guaranteed by the Constitution may nonetheless form a ground for federal

12 habeas corpus relief where its impact so infects the entire trial that the resulting conviction

13 violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir.

14 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980));  See also Prantil v. California, 843

15 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an

16 erroneous instruction "so infected the entire trial that the resulting conviction violates due

17 process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise

18 to the level of a due process violation is similar to the analysis used in determining, under Brecht

19 v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious

20 effect" on the outcome.  See Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled

21 on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002); McKinney v.

22 Rees, 993 F.2d 1378, 1385 (9th Cir. 1993).  Where, as here, the challenge is to a failure to give

23 an instruction, petitioner's burden is "especially heavy," because "[a]n omission, or an

24 incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson

25 v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir.

26 1997).

2. <u>CALJIC No. 2.21.2</u>

Petitioner claims that the trial court violated his right to a fair trial when it failed to define the term "material part," as used in CALJIC No. 2.21.2.[9]  He argues that "a trial court has an affirmative duty to give, <u>sua</u> <u>sponte</u>, correct and unconfusing instructions and to instruct on all general principles of law pertinent to the issues raised by the evidence." (Pet. at 5.)  In the traverse, petitioner contends that the trial court's failure to define "material part" caused the jury to find petitioner guilty "without given [sic] full weight to the discrepancies in the various statements made by [Stephanie M.]."  (Traverse at 10.)

The California Court of Appeal rejected petitioner's claim in this regard on state law grounds.  After analyzing several state court cases, the appellate court determined that the term "material part" was not a difficult technical term, but was "commonly understood by those who are familiar with the English language." (Opinion at 15.)  Accordingly, the instruction "did not require further definition on the trial court's own motion." (<u>Id.</u> at 17.)  The state appellate court also noted that "if defendant believed CALJIC No. 2.21 was too ambiguous, he should have requested appropriate clarifying or amplifying language." <u>Id.</u>

No reasonable jurist could conclude that the giving of CALJIC No. 2.21.2 without a clarifying instruction "so infected the entire trial that the resulting conviction violates due process." <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)).  Nor has petitioner demonstrated that "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).  Contrary to petitioner's argument, the meaning of the term "material part" is clear from the context of the instruction.  Moreover, although petitioner argues that CALJIC No.

---

[9]  That jury instruction provides that: "A witness, who is willfully false in one <u>material</u> <u>part</u> of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars."  (Emphasis added.)

2.21.2 prevented the jury from evaluating the "discrepancies" in Stephanie M.'s testimony, he

has not provided any particular examples of such discrepancies in support of this conclusory

statement.  Petitioner has failed to demonstrate that the state court's decision with respect to this

claim was contrary to or an unreasonable application of the federal due process principles set

forth above.  Accordingly, he is not entitled to relief on this claim.

### 3. CALJIC No. 1.00

Petitioner claims that CALJIC No. 1.00, "which instructed in terms of whether the

defendant was 'more likely to be guilty than not' was confusing by impermissibly lessening the

prosecutor's burden of proving [petitioner's] guilt beyond a reasonable doubt."  (Pet. at 6.)[10]

Relying on state law, the California Court of Appeal concluded that CALJIC No.

1.00 did not mislead the jury or lower the prosecution's burden of proof.  The court reasoned as

follows:

> Here . . . the trial court did not mislead the jury by giving
> conflicting instructions covering the same subject.  CALJIC No.
> 1.00 does not nullify or directly conflict with the reasonable doubt
> standard set forth in CALJIC No. 2.90.  It does not purport to
> address the prosecution's burden of proof, nor does it ask the jury
> to consider whether a defendant is more likely to be guilty than not
> guilty.  Rather, the instruction simply cautions jurors not to
> consider certain irrelevant, and potentially inflammatory, facts.
>
> * * *

---

[10] CALJIC No. 1.00 provides, in pertinent part:

> You must not be influenced by pity for or prejudice against a
> defendant. You must not be biased against a defendant because
> [he] [she] has been arrested for this offense, charged with a crime,
> or brought to trial. None of these circumstances is evidence of guilt
> and you must not infer or assume from any or all of them that a
> defendant is more likely to be guilty than not guilty. You must not
> be influenced by sentiment, conjecture, sympathy, passion,
> prejudice, public opinion or public feeling. Both the People and a
> defendant have a right to expect that you will conscientiously
> consider and weigh the evidence, apply the law, and reach a just
> verdict regardless of the consequences.

1

> After reviewing the record as a whole, we are convinced it is not
> reasonably likely that the challenged instruction would have caused
> the jury to misapply the law regarding the prosecution's burden of
> proof.  (citation omitted.)

2

3

4   (Opinion at 14-15.)

5          Petitioner has not cited any federal court decision at all, holding that language

6   such as that contained in CALJIC No. 1.00 is confusing or misleading or that it impermissibly

7   lowers the prosecution's burden of proof.  See Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004)

8   (absent precedent creating clearly established federal law, the state court's decision cannot be

9   contrary to clearly established federal law).  Accordingly, petitioner is not entitled to relief on

10  this claim.

11                  4.  Instruction on Reasonable Doubt

12         Petitioner's final claim is that the 1994 revised version of California Jury

13  Instruction 2.90, which was given at his trial, violates the Fourteenth Amendment because it

14  "reduced the prosecution's burden of proof to something less than the required 'guilt beyond a

15  reasonable doubt standard.'"  (Pet. at 6.)  The California Court of Appeal concluded that

16  petitioner's challenge to the reasonable doubt instruction given at his trial was "frivolous."

17  (Opinion at 12.)

18         Petitioner's jury in this case was instructed with the current version of CALJIC

19  No. 2.90, which provides, in relevant part, as follows:

20

> Reasonable doubt is defined as follows:  It is not a mere possible
> doubt; because everything relating to human affairs is open to
> some possible or imaginary doubt.  It is that state of the case
> which, after the entire comparison and consideration of all the
> evidence, leaves the minds of the jurors in that condition that they
> cannot say they feel an abiding conviction of the truth of the
> charge.

21

22

23

24  (Clerk's Transcript on Appeal (CT) at 114.)  Prior to its modification in 1994, this pattern

25  instruction stated in relevant part:

26  /////

1

> Reasonable doubt is defined as follows:  It is not a mere possible
> doubt; because everything relating to human affairs, **and
> depending on moral evidence**, is open to some possible or
> imaginary doubt.  It is that state of the case which, after the entire
> comparison and consideration of all the evidence, leaves the minds
> of the jurors in that condition that they cannot say they feel an
> abiding conviction, **to a moral certainty**, of the truth of the
> charge.  (Emphasis added).

2

3

4

5

6          In Victor v. Nebraska, 511 U.S. 1 (1994), the United States Supreme Court upheld

7    the constitutionality of this pre-1994 instruction, but criticized the use of the terms "moral

8    evidence" and "moral certainty."  (Id. at 10-14.)  Subsequent to the decision in Victor, the

9    California Supreme Court suggested that the instruction should be revised to delete the terms

10   "moral evidence" and "moral certainty" in order to prevent future convictions from being

11   reversed on the basis of the instruction.  In this regard, the California Supreme Court stated:

12

> "A slight modification in view of [the Victor] decision might be
> deemed safe, indeed safer than not making it.  The high court made
> clear that the terms "moral evidence" and "moral certainty" add
> nothing to the jury's understanding of reasonable doubt.  It thus
> seems that trial courts might, in the future, safely delete the
> following phrases in the standard instruction:  "and depending on
> moral evidence," and "to a moral certainty."

13

14

15

16   People v. Freeman, 8 Cal. 4th 450, 504 (1994).  California's pattern instruction on reasonable

17   doubt, CALJIC No. 2.90, was subsequently revised accordingly, and it is the revised instruction

18   that was given to petitioner's jury.

19          Petitioner's claim in this regard has been explicitly rejected by the Ninth Circuit

20   Court of Appeals and is therefore unavailing.  See Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir.

21   1999).  Moreover, in state criminal trials, the Due Process Clause of the Fourteenth Amendment

22   "protects the accused against conviction except upon proof beyond a reasonable doubt of every

23   fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358,

24   364 (1970).  "[T]he Constitution does not require that any particular form of words be used in

25   advising the jury of the government's burden of proof.  Rather, 'taken as a whole, the instructions

26   [must] correctly conve[y] the concept of reasonable doubt to the jury.'"  Victor, 511 U.S. at 5

1   (quoting Holland v. United States, 348 U.S. 121, 140 (1954) (internal citation omitted)).  In

2   evaluating the constitutionality of a jury charge such as this one, a court must determine "whether

3   there is a reasonable likelihood that the jury understood the instructions to allow conviction

4   based on proof insufficient to meet the Winship standard."  Victor, 511 U.S. at 6.  See also

5   Ramirez v. Hatcher, 136 F.3d 1209, 1211 (9th Cir. 1998).

6          Petitioner has failed to demonstrate a reasonable likelihood that the jury in his

7   case understood the instructions given at his trial either to suggest a standard of proof lower than

8   due process requires or to allow conviction on factors other than the prosecution's proof.

9   Reviewing the instructions in their entirety, this court finds no reasonable likelihood that the jury

10  misunderstood the government's burden of proving petitioner's guilt beyond a reasonable doubt.

11  In addition to being given CALJIC 2.90, the jury was instructed that they "must determine what

12  facts have been proved from the evidence received in the trial and not from any other source."

13  (CT at 82.)  The jury was also instructed that they could not find petitioner guilty based on

14  circumstantial evidence "unless the proved circumstances are not only (1) consistent with the

15  theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other

16  rational conclusion."  (Id. at 97.)  Finally, the jury was told that the prosecution had the burden

17  "of proving [petitioner] guilty beyond a reasonable doubt."  (Id. at 114).  These instructions,

18  along with CALJIC 2.90, adequately informed the jury of the prosecution's burden to prove the

19  case against petitioner beyond a reasonable doubt based on an analysis of the totality of the

20  evidence introduced at trial.  The Supreme Court has held that "[a]n instruction cast in terms of

21  an abiding conviction as to guilt, without reference to moral certainty, correctly states the

22  government's burden of proof."  Victor, 511 U.S. at 14.

23         This court concludes that the modified CALJIC 2.90 instruction given to the jury

24  here was a reasonable response to the Supreme Court's decision in Victor.  Further, taken as a

25  whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.  Lisenbee,

26  166 F.3d at 999; Ramirez, 136 F.3d at 1214.  Petitioner has failed to demonstrate that the state

20

1  court's decision upholding the constitutionality of this jury instruction was contrary to, or

2  involved an unreasonable application of federal law.  Accordingly, relief as to this claim should

3  be denied.

4                                    CONCLUSION

5            For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6  application for a writ of habeas corpus be denied.

7            These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9  days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within ten days after service of the objections.  The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: October 19, 2007.

16

17  _____

18  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

19  DAD:8
    wayne2437.hc

20

21

22

23

24

25

26

                                         21